# EXHIBIT 20

750 Administrative practice and procedure, Exports, Reporting and recordkeeping requirements.

**Eileen Albanese,**
*Director, Office of Exporter Services.*
[FR Doc. 04–26518 Filed 11–30–04; 8:45 am]
**BILLING CODE 3510–33–P**

---

**DEPARTMENT OF TRANSPORTATION**

**Federal Highway Administration**

**23 CFR Part 655**

[FHWA Docket No. FHWA–2004–17321]

**RIN 2125–AF02**

**National Standards for Traffic Control Devices; the Manual on Uniform Traffic Control Devices for Streets and Highways; Specific Service and General Service Signing for 24-Hour Pharmacies**

**AGENCY:** Federal Highway Administration (FHWA), DOT.
**ACTION:** Final rule.

**SUMMARY:** The FHWA published an interim final rule on May 10, 2004, that amended the 2003 Edition of the Manual on Uniform Traffic Control Devices (MUTCD) to permit the use of Specific Service and General Service signing to assist motorists in locating licensed 24-hour pharmacy services open to the public. Those changes were designated as Revision No. 1 to the 2003 Edition of the MUTCD, and they became effective on July 21, 2004. In the interim final rule, the FHWA provided a 50-day comment period for the public to review and make comment on the technical details. The FHWA adopts as final the interim rule for Revision No. 1, with certain changes to the technical details to address pertinent comments to the docket. The MUTCD is incorporated by reference in 23 CFR part 655, subpart F, and recognized as the national standard for traffic control devices used on all public roads.

**DATES:** This regulation is effective January 3, 2005. The incorporation by reference of the publication listed in this rule is approved by the Director of the Federal Register as of January 3, 2005.

**FOR FURTHER INFORMATION CONTACT:** Mr. Ernest Huckaby, Office of Transportation Operations (HOTO–1), (202) 366–9064, or Mr. Raymond Cuprill, Office of the Chief Counsel, (202) 366–0791, Federal Highway Administration, 400 Seventh Street, SW., Washington, DC 20590–0001. Office hours are from 7:45 a.m. to 4:15 p.m., *e.t.*, Monday through Friday, except Federal holidays.

**SUPPLEMENTARY INFORMATION:**

**Electronic Access**

This document and all comments received by the U.S. DOT Docket Facility, Room PL–401, may be viewed through the Docket Management System (DMS) at *http://dms.dot.gov.* The DMS is available 24 hours each day, 365 days each year. Electronic retrieval help and guidelines are available under the help section of this Web site.

An electronic copy of this document may be downloaded by using a computer, modem and suitable communications software from the Government Printing Office's Electronic Bulletin Board Service at (202) 512–1661. Internet users may reach the Office of the Federal Register's home page at *http://www.archives.gov* and the Government Printing Office's Web page at *http://www.gpoaccess.gov/nara.*

**Background**

On January 23, 2004, the President signed, thereby enacting into law, the Consolidated Appropriations Act, Fiscal Year 2004 (the Act), Public Law 108–199, 118 Stat. 3. Division F of the Act (the Transportation, Treasury, and Independent Agencies Appropriations Act, 2004, at 118 Stat. 279), Title I, section 124, directs the Secretary of Transportation to amend the MUTCD to include a provision permitting information to be provided to motorists to assist motorists in locating licensed 24-hour pharmacy services open to the public. The Act also allows placement of logo panels that display information disclosing the names or logos of pharmacies that are located within three miles of an interchange on the Federal-aid system.[1]

The FHWA published an interim final rule on May 10, 2004, at 69 FR 25828, that amended the 2003 Edition of the Manual on Uniform Traffic Control Devices (MUTCD) to implement the requirements of the Act and provide for the uniformity of signing for pharmacy services when jurisdictions choose to install such signs. Those changes were designated as Revision No. 1 to the 2003 Edition of the MUTCD, and they became effective on July 21, 2004. In the interim final rule, the FHWA provided a 50-day comment period for the public to review and make comment on the technical details. Based on the comments received and its own experience, the FHWA is adopting as final the interim rule for Revision No. 1, with certain changes to

---
[1] Federal-aid systems are defined in 23 U.S.C. 101 and 103.

---

the technical details to address pertinent comments to the docket.

The text of this Revision No. 1 and the text of the 2003 Edition of the MUTCD with Revision No. 1 final text incorporated are available for inspection and copying as prescribed in 49 CFR part 7 at the FHWA Office of Transportation Operations. Furthermore, final Revision No. 1 changes are available on the MUTCD Internet site (*http://mutcd.fhwa.dot.gov*). The entire MUTCD text with final Revision No. 1 text incorporated is also available on this Internet site.

**Summary of Comments**

The FHWA received 36 letters submitted to the docket, of which four were duplicates of letters previously submitted to the docket. Comments were received from the National Committee on Uniform Traffic Control Devices (NCUTCD), four State Departments of Transportation, four members of Congress and a Senator all representing the State of Illinois, two national organizations representing pharmacy businesses, six other national organizations representing a variety of interests, nine organizations representing retail merchants or drug stores in individual States, one major national chain drug store company, and four individual private citizens. The FHWA has reviewed and analyzed all the comments received. General comments are discussed first, followed by discussion of significant comments and adopted changes in each of the individual sections of the MUTCD affected by this final rule.

**Discussion of General Comments—Part 2 Signs**

Nearly all the letters to the docket expressed either support for or opposition to the general concept of adding signing for 24-hour pharmacies to the MUTCD. The comments from the four members of Congress and the Senator representing the State of Illinois were in support of the changes. The FHWA was required by the law described above to add pharmacy signing to the MUTCD and, as a result, the interim final rule solicited comments only on the technical details of the signing and not the general concept. The comments we received in opposition to the general concept provided insufficient information to suggest that the FHWA should seek legislative relief at this time.

**Discussion of Section 2D.45  General Service Signs (D9 Series)**

A private citizen commented that the MUTCD changes included in the interim final rule went beyond the legislative mandate by including General Service signs as well as Specific Service (logo) signs, and that this was inappropriate. Although General Service signs for 24-hour pharmacies were not specifically mentioned in the law, these were addressed in the interim final rule because some States have no program for Specific Service signs and only use General Service signs. Also, in urban areas it is often impractical to provide Specific Service signing due to close spacing of interchanges and, in these conditions, many States use General Service signs instead as a stand-alone supplemental sign (such as the D9–18 or D9–18a) or as sets of individual D9 series signs attached to (supplementing) interchange guide signs. Therefore, the FHWA retains the General Service signs for 24-hour pharmacies in this final rule.

A national association representing pharmacists commented that eligibility for signing should be extended to pharmacies that are open less than 24 hours per day. Many other commenters, however, supported limiting the signing eligibility to 24-hour pharmacies, stating that there is a need for access to pharmacy services 24 hours a day and that signing leading travelers to a closed pharmacy would not be in the public interest. Because of these reasons and the fact that the legislation was specific in directing that eligibility be limited to 24-hour pharmacies, the FHWA declines to make any change to the 24 hours per day criterion for eligibility for General Service signing as contained in the interim final rule. This discussion and decision also apply to the similar criterion for pharmacy signing eligibility as stated in other applicable sections of Part 2 of the MUTCD, and the FHWA makes minor editorial changes to the text of various sections in Part 2 to add the words ''24-hour'' preceding ''pharmacy'' where needed for clarity.

A national association representing chain drug stores commented that the signing eligibility requirement for a licensed pharmacist to be on duty ''at all times'' and ''7 days per week'' are too inflexible, since pharmacists could be ''on a break'' and since some 24-hour pharmacies are closed on some holidays. The FHWA declines to make a change in these requirements as stated in the interim final rule. The FHWA believes that the intent of the legislation is to assure that road users can locate pharmacy services that are available at all times. A pharmacist can be on a ''break'' and still be on duty in the pharmacy, and in all probability will also be present on the pharmacy premises during the break. The service availability criterion for other 24 hours per day services, such as hospitals, emergency services, etc., is stated as ''24 hour service, 7 days per week'' in Section 2D.45 and these facilities are in fact open for service on holidays. States could make provisions in their service signing eligibility policies to account for pharmacist breaks and holidays, particularly if their individual State laws make reference to these situations and how they are to be handled.

The NCUTCD and a private citizen commented that the eligibility criteria for pharmacy signing should be modified to add that a State-licensed pharmacist must be ''present'' as well as ''on duty'' 24 hours per day, 7 days per week. The FHWA agrees with this comment and changes the text of Sections 2D.45, 2E.51, and 2F.01 accordingly. For a pharmacy to truly offer its prescription-dispensing services on a 24 hours per day basis, it is necessary that a licensed pharmacist be physically present at all times. It is possible for a pharmacist to be ''on duty'' in the employ of the individual pharmacy or of the pharmacy chain company that owns or operates the pharmacy, but not physically present (such as one ''late night'' pharmacist ''shared'' between two or more stores in a given city or region). If a pharmacist must travel to the pharmacy from some other location during late night hours if a road user needs his or her services, delays would result in filling the needed prescription. This would be inconsistent with the intent of the legislation. Adding the requirement for a licensed pharmacist to be ''present'' as well as on duty clarifies the intent.

The American Pharmacists Association (APhA), a national organization representing pharmacists, suggested that the D9–20 pharmacy symbol sign shown in Figure 2D–11 General Service Signs in the interim final rule should use a different design. Specifically, the APhA suggested that the ''One Symbol for Pharmacy'' design be used instead of the bold ''Rx'' symbol. The design of that symbol (hereafter referred to as ''the APhA symbol''), features an ''Rx'' with the ''x'' visually less distinct from the ''R'' than in the symbol used by the FHWA in the interim final rule (hereafter referred to as ''the FHWA symbol''). Also, inside the loop of the ''R'' of the APhA symbol are graphical stylized representations of three human figures (a man, a woman, and a child.) The APhA symbol is more visually cluttered than the FHWA symbol and would therefore provide a legibility distance considerably less than that of the FHWA symbol. There is no research indicating that the APhA symbol is more recognizable by the traveling public than the FHWA symbol. The FHWA believes that the simplicity and boldness of the FHWA symbol will aid in recognition, conspicuity, and legibility for road users, as compared to the APhA symbol. Also, the APhA comments state that that organization trademarked the APhA symbol in 1993. Because patented or trademarked symbols cannot be included in the MUTCD, the FHWA would require that the symbol be released to the public domain. Although the comments indicate that APhA would be willing to allow the FHWA to use the symbol, that is different from placing it into the public domain. It is likely that the APhA would want to retain its trademark so that the symbol could be used for other purposes regarding pharmacies and pharmacists, such as letterhead, business signs, etc. For these reasons, the FHWA believes that the pharmacy symbol shown for the D9–20 sign in the interim final rule is a better alternative to the APhA symbol and therefore makes no change in the symbol design.

The NCUTCD, 3 State highway authorities, and one private citizen suggested that the D9–20a ''24 HR'' plaque shown with the D9–20 pharmacy symbol in Figure 2D–11 in the interim final rule should be eliminated. These commenters stated that ''24 HR'' plaques are not required in the MUTCD for other services that must be available 24 hours per day in order to be eligible for signing (such as hospitals and emergency services).

A comment from a national chain drug store company supported the ''24 HR'' plaque because of the information and benefit it provides to travelers.

The FHWA believes that, although other services that must operate 24 hours per day to be eligible for signing do not require the use of a ''24 HR'' plaque, there is good reason to require the D9–20a ''24 HR'' plaque with the D9–20 Pharmacy symbol. Most road users expect and understand that a hospital must be open 24 hours per day; however, this is not the case with pharmacies. Most pharmacies are not open 24 hours per day, but the legislation specifically limits eligibility to 24-hour pharmacies. Therefore, it is necessary that road users being guided to a 24-hour pharmacy by these signs be advised that it is in fact a 24-hour pharmacy that can be accessed via the signed exit. Otherwise, there would be

doubt in the road user's mind as to whether or not to exit if he or she were seeking the pharmacy services during the middle of the night. Also, if the plaque were made an option rather than a requirement, then some States might use it and others would not, and this lack of uniform application would lead to road user confusion. The FHWA retains the required use of the D9–20a plaque with the D9–20 pharmacy symbol sign as stated in the interim final rule.

### Discussion of Section 2E.51    General Services Signs

As stated earlier in the discussion of comments on Section 2D.45 General Service Signs, the FHWA retains the required use of the D9–20a ''24 HR'' plaque with the D9–20 pharmacy symbol General Service sign. For consistency with the principles stated in that discussion, the FHWA modifies Figure 2E–42 Examples of General Service Signs (with Exit Numbering) accordingly. In the D9–18 sign (with six service symbols) shown as the lower right sign of the 4 signs shown in the figure, the ''Rx'' symbol is shifted slightly upward on the sign so that it is closer to the lodging symbol above it, and the legend ''24 HR'' is added underneath the ''Rx'' symbol. Also, in the D9–18a sign shown as the lower left sign of the 4 signs shown in the figure, the legend ''24 HR'' is added to precede the word ''PHARMACY''.

The NCUTCD commented that the order of the services shown on the D9–18a word message sign in the lower left of the figure should be modified so that ''24 HR PHARMACY'' would be above ''HOSPITAL.'' The NCUTCD stated that this would avoid potential confusion with a hospital that has a pharmacy. The FHWA agrees with this comment and makes the change in Figure 2E–42. Some hospitals have pharmacies that serve hospital inpatients but not travelers, and a road user could misinterpret the two last lines of the D9–18a word message sign as being a single phrase ''hospital pharmacy,'' rather than two separate services, and infer that the pharmacy services might not be available to the traveler. Changing the order of the services such that hospital is on the bottom line will help prevent such a misinterpretation. For consistency with this change in the figure, the FHWA also modifies the last sentence of the fourth Option statement of Section 2E.51 to delete the phrase ''in the last position.''

### Discussion of Section 2F.01    Eligibility

A few commenters suggested that the maximum distance of 3 miles from an interchange on the Federal-aid highway system to be eligible for pharmacy signing should be extended to up to 15 miles in cases where eligible pharmacies do not exist within 3 miles. These commenters cited the existing Option statement in Section 2F.01 that provides for extending the distance limit up to a maximum of 15 miles from an interchange for signing eligibility for other services, such as gas, food, and lodging, if those facilities within 3 miles are not available or choose not to participate in the program.

Other commenters stated their specific support of limiting eligibility to pharmacies within 3 miles and not extending that limit. These commenters stated that requiring the pharmacy to be within 3 miles is self-limiting and serve the best interests of travelers in need of pharmacy services. Further, the legislation was specific in directing that eligibility be limited to pharmacies within 3 miles of an interchange on the Federal-aid highway system. Accordingly, the FHWA declines to make any change to the maximum distance of 3 miles as a criterion for eligibility for Specific Service signing as contained in the interim final rule. This discussion and decision also apply to the similar criterion for pharmacy signing eligibility as stated in other applicable sections of Part 2 of the MUTCD.

A State highway authority commented that the phrase ''in either direction'' in both the last paragraph of the second Standard statement and the first paragraph of the second Guidance statement should be revised to ''in any direction'' to clarify that pharmacies are not limited to only one direction from an interchange. The FHWA agrees with this comment and makes this editorial change in both places in this final rule. ''Any direction'' is more accurate and inclusive than ''either direction,'' since there could be more than two directions that can be traveled away from a given interchange.

### Discussion of Section 2F.02    Application

In the interim final rule, the first paragraph of the Option statement was modified to remove the list of various services that may be signed on any class of highway. The resulting text of this paragraph in the interim final rule stated, ''Specific Service signs may be used on any class of highway.'' The NCUTCD recommended that this wording is unnecessary because it repeats a similar statement that is in the first Option statement in Section 2F.01. The FHWA agrees that this is an unnecessary duplication and removes the first paragraph of the Option statement in Section 2F.02 in this final rule.

### Discussion of Chapter 2H    Recreational and Cultural Interest Area Signs

Comments from the NCUTCD, one State highway authority, and one private citizen opposed the addition of the RM–230 24-Hour Pharmacy symbol sign in the series of brown and white recreational and cultural interest area symbol signs. These commenters stated that pharmacy signing is not needed as a recreational area sign.

A national chain drug store company stated its support for adding the RM–230 sign in Chapter 2H, citing consistency with similar brown and white symbol signs for gas, food, and lodging that are included in Chapter 2H. The FHWA agrees and declines to remove the RM–230 sign that was included in Chapter 2H in the interim final rule. Brown and white symbol signs for gas, food, and lodging are included in Chapter 2H because these services are often available within recreational areas such as National Parks, and thus there can be a need to provide guide signing to those facilities from the park entrance road or from other areas within the park. Also, there are certain park roadways in some urbanized areas, such as National Historical Parkways, and some linear park roads such as adjacent to Grand Tetons National Park, that also provide access to nearby towns and cities where 24-hour pharmacies may exist and may meet the criteria for signing. Chapter 2H provides for the use of brown and white General Service signing on park roadways. Therefore, it is appropriate and consistent to include in Chapter 2H a brown and white version of the pharmacy symbol sign for use if General Service signing for a 24-hour pharmacy is needed on a roadway of this type.

### Rulemaking Analyses and Notices

### Executive Order 12866 (Regulatory Planning and Review) and U.S. DOT Regulatory Policies and Procedures

The FHWA has determined that this action is not a significant regulatory action within the meaning of Executive Order 12866 or significant within the meaning of the U.S. Department of Transportation regulatory policies and procedures. Including 24-hour pharmacies in General and Specific Service signs is required by law (see section 124 Division F, Title I, of Public Law 108–199, January 23, 2004). States and other jurisdictions are not required to install signs for pharmacy services,

but if they elect to do so, these amendments to the MUTCD will create uniformity in how the Pharmacy signs are used on public roads. These changes will not adversely affect, in a material way, any sector of the economy. In addition, these changes will not create a serious inconsistency with any other agency's action or materially alter the budgetary impact of any entitlements, grants, user fees, or loan programs; nor will the changes raise any novel legal or policy issues. Therefore, a full regulatory evaluation is not required.

### Regulatory Flexibility Act

In compliance with the Regulatory Flexibility Act (RFA) (Pub. L. 96–354, 5 U.S.C. 601–612) the FHWA has evaluated the effects of this action on small entities and has determined that this action will not have a significant economic impact on a substantial number of small entities. This action adds General Service and Specific Service signing for optional use by States to provide motorist information concerning pharmacies in order to aid the traveling public. States are not included in the definition of small entity set forth in 5 U.S.C. 601. For these reasons, the RFA does not apply and the FHWA certifies that this action will not have a significant economic impact on a substantial number of small entities.

### Unfunded Mandates Reform Act of 1995

This final rule will not impose unfunded mandates as defined by the Unfunded Mandates Reform Act of 1995 (Pub. L. 104–4, March 22, 1995, 109 Stat. 48). This final rule will not result in the expenditure by State, local, and tribal governments, in the aggregate, or by the private sector, of $120.7 million or more in any one year (2 U.S.C. 1532). States and other jurisdictions are not required to install signs for pharmacy services, but if they elect to do so, these amendments to the MUTCD will create uniformity in how the signs are used on public roads.

### Executive Order 13132 (Federalism)

This action has been analyzed in accordance with the principles and criteria contained in Executive Order 13132, dated August 4, 1999, and it has been determined that this action does not have a substantial direct effect or sufficient federalism implications on States that would limit the policymaking discretion of the States. The FHWA has also determined that this action does not preempt any State law or State regulation or affect the States' ability to discharge traditional State governmental functions.

The MUTCD is incorporated by reference in 23 CFR part 655, subpart F. These amendments are in keeping with the Secretary of Transportation's authority under 23 U.S.C. 109(d), 315, and 402(a) to promulgate uniform guidelines to promote the safe and efficient use of the highway. The overriding safety benefits of the uniformity prescribed by the MUTCD are shared by all of the State and local governments, and changes made to this rule are directed at enhancing safety. To the extent that these amendments override any existing State requirements regarding traffic control devices, they do so in the interest of national uniformity.

### Executive Order 12372 (Intergovernmental Review)

Catalog of Federal Domestic Assistance Program Number 20.205, Highway Planning and Construction. The regulations implementing Executive Order 12372 regarding intergovernmental consultation on Federal programs and activities apply to this program.

### Paperwork Reduction Act of 1995

This action does not contain a collection of information requirement under the Paperwork Reduction Act of 1995, 44 U.S.C. 3501–3520.

### Executive Order 13175 (Tribal Consultation)

The FHWA has analyzed this action under Executive Order 13175, dated November 6, 2000, and believes that it will not have substantial direct effects on one or more Indian tribes; will not impose substantial direct compliance costs on Indian tribal governments; and will not preempt tribal law. The requirements set forth in this final rule do not directly affect one or more Indian tribes. Therefore, a tribal summary impact statement is not required.

### Executive Order 13211 (Energy Effects)

The FHWA has analyzed this action under Executive Order 13211, Actions Concerning Regulations That Significantly Affect Energy Supply, Distribution, or Use. We have determined that this is not a significant energy action under that order because it is not a significant regulatory action under Executive Order 12866 and is not likely to have a significant adverse effect on the supply, distribution, or use of energy.

### National Environmental Policy Act

The agency has analyzed this action for the purposes of the National Environmental Policy Act of 1969 (42 U.S.C. 4321–4347 *et seq.*) and has determined that it will not have any effect on the quality of the environment.

### Executive Order 12630 (Taking of Private Property)

The FHWA has analyzed this final rule under Executive Order 12630, Government Actions and Interference with Constitutionally Protected Property Rights. The FHWA does not anticipate that this action will effect a taking of private property or otherwise have taking implications under Executive Order 12630.

### Executive Order 12988 (Civil Justice Reform)

This action meets applicable standards in Sections 3(a) and 3(b)(2) of Executive Order 12988, Civil Justice Reform, to minimize litigation, eliminate ambiguity, and reduce burden.

### Executive Order 13045 (Protection of Children)

The FHWA has analyzed this action under Executive Order 13045, Protection of Children from Environmental Health Risks and Safety Risks. The FHWA certifies that this action will not cause an environmental risk to health or safety that may disproportionately affect children.

### Regulation Identification Number

A regulation identification number (RIN) is assigned to each regulatory action listed in the Unified Agenda of Federal Regulations. The Regulatory Information Service Center publishes the Unified Agenda in April and October of each year. The RIN contained in the heading of this document can be used to cross reference this action with the Unified Agenda.

### List of Subjects in 23 CFR Part 655

Design standards, Grant programs—Transportation, Highways and roads, Incorporation by reference, Signs and symbols, Traffic regulations.

Issued on: November 22, 2004.

**Mary E. Peters,**
*Federal Highway Administrator.*

■ In consideration of the foregoing, FHWA adopts as final the interim final rule published May 10, 2004 (69 FR 25828), with the following change:

## PART 655—TRAFFIC OPERATIONS

■ 1. The authority citation for part 655 continues to read as follows:

**Authority:** 23 U.S.C. 101(a), 104, 109(d), 114(a), 217, 315, and 402(a); 23 CFR 1.32; and 49 CFR 1.48(b).

**Subpart F—Traffic Control Devices on Federal-Aid and Other Streets and Highways—[Amended]**

■ 2. Amend §655.601(a), to read as follows:

### §655.601　Purpose.

\* \* \* \* \*

(a) Manual on Uniform Traffic Control Devices for Streets and Highways (MUTCD), 2003 Edition, including Revision No.1, FHWA, dated November 2004. This publication is incorporated by reference in accordance with 5 U.S.C. 552 (a) and 1 CFR part 51 and is on file at the National Archives and Record Administration (NARA). For information on the availability of this material at NARA call (202) 741–6030, or go to *http://www.archives.gov/ federal_register/ code_of_federal_regulations/ ibr_locations.html.* It is available for inspection and copying at the Federal Highway Administration, 400 Seventh Street, SW., Room 3408, Washington, DC 20590, as provided in 49 CFR part 7. The text is also available from the FHWA Office of Transportation Operations' Web site at: *http:// mutcd.fhwa.dot.gov.*

\* \* \* \* \*

[FR Doc. 04–26417 Filed 11–30–04; 8:45 am]
**BILLING CODE 4910–22–P**

---

**DEPARTMENT OF THE TREASURY**

**Internal Revenue Service**

**26 CFR Part 31**

**[TD 9162]**

**RIN 1545–BB66**

**Federal Unemployment Tax Deposits— De Minimis Threshold**

**AGENCY:** Internal Revenue Service (IRS), Treasury.
**ACTION:** Final regulations.

**SUMMARY:** This document contains final regulations relating to the deposit of Federal Unemployment Tax Act (FUTA) taxes. The regulations change the accumulated amount of tax liability above which taxpayers must begin depositing Federal unemployment taxes. The regulations affect employers that have an accumulated FUTA tax liability of $500 or less.

**DATES:** *Effective Date:* These regulations are effective December 1, 2004.

*Applicability Date:* For dates of applicability, see § 31.6302(c)–3(a)(2) and (3).

**FOR FURTHER INFORMATION CONTACT:** Heather L. Dostaler, (202) 622–4940 (not a toll-free number).

**SUPPLEMENTARY INFORMATION:**

### Background

This document contains amendments to the Regulations on Employment Taxes and Collection of Income Tax at Source (26 CFR part 31) under section 6302 relating to mode or time of collection. The current rules relating to the deposit of FUTA taxes generally require employers to deposit taxes on a quarterly basis. An exception provides that an employer is not required to make a deposit until accumulated FUTA tax liability exceeds $100.

A notice of proposed rulemaking (REG–144908–02) providing an additional exception to the FUTA tax deposit requirements was published in the **Federal Register** (68 FR 42329) on July 17, 2003. Under the proposed exception, an employer would not be required to deposit FUTA taxes if the employer's liability for other employment taxes (FICA taxes and withheld income taxes) was below the threshold at which deposits were required for those other taxes.

Three written comments were received in response to the notice of proposed rulemaking, but there was no request for a public hearing and a public hearing was not held. All comments were considered and are available for public inspection upon request. After consideration of the written comments, the proposed regulations under section 6302 are adopted as revised by this Treasury decision. The public comments and the revisions are discussed below.

### Summary of Comments

Two commentators expressed concern that the creation of an additional exception linked to the deposit rules for other employment taxes will create complexity and that a single exception based on FUTA tax liability is sufficient. One commentator expressed concern regarding the low threshold amounts under both exceptions, and also expressed concern that the proposed exception could be misinterpreted by those accustomed to referring only to the amount of accumulated FUTA taxes.

One commentator suggested that the regulations should exempt household employers who file Schedule H, "Household Employment Taxes," with Form 1040. This comment is outside the scope of these regulations, which are limited to the deposit rules issued under section 6302. Household employment taxes reported on Schedule H are paid with the employer's income taxes.

### Explanation of Provisions

After considering the public comments, the IRS and Treasury Department agree that a single exception based on a higher FUTA tax liability threshold is preferable to the exception in the proposed regulations. Accordingly, the final regulations do not include an exception linked to the deposit rules for other employment taxes. Instead, they increase the FUTA tax liability threshold from $100 to $500. Thus, an employer will not be required to make a deposit of FUTA taxes until FUTA tax liability exceeds $500. This change is a simple and straightforward step to reduce the burden on small businesses.

### Special Analyses

It has been determined that this Treasury decision is not a significant regulatory action as defined in Executive Order 12866. Therefore, a regulatory assessment is not required. It also has been determined that section 553(b) of the Administrative Procedure Act (5 U.S.C. chapter 5) does not apply to these regulations, and, because these regulations do not impose a collection of information on small entities, the Regulatory Flexibility Act (5 U.S.C. chapter 6) does not apply. Pursuant to section 7805(f) of the Internal Revenue Code, the notice of proposed rulemaking preceding these regulations was submitted to the Chief Counsel for Advocacy of the Small Business Administration for comment on its impact on small business.

### Drafting Information

The principal author of these regulations is Heather L. Dostaler of the Office of Associate Chief Counsel, Procedure and Administration (Administrative Provisions and Judicial Practice Division).

### List of Subjects in 26 CFR Part 31

Employment taxes, Income taxes, Penalties, Pensions, Railroad retirement, Reporting and recordkeeping requirements, Social Security, Unemployment compensation.

### Adoption of Amendments to the Regulations

■ Accordingly, 26 CFR part 31 is amended as follows:

### PART 31—EMPLOYMENT TAXES AND COLLECTION OF INCOME TAX AT SOURCE

■ **Paragraph 1.** The authority citation for part 31 continues to read, in part, as follows:

**Authority:** 26 U.S.C. 7805 \* \* \*