UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

STATE OF MICHIGAN,

        Plaintiff,

v.                                                     Case No. 1:16-CV-1084

M22 LLC,                                   HON. GORDON J. QUIST

        Defendant.
_____/

## OPINION FINDING LACK OF JURISDICTION

      Plaintiff, State of Michigan, filed a complaint in the Ingham County Circuit Court seeking declaratory relief in connection with a pending proceeding that the State filed against Defendant, M22, LLC (M22), before the United States Patent and Trademark Office's Trademark Trial and Appeal Board (TTAB). In the TTAB proceeding, the State sought cancellation of certain registered trademarks owned by M22 that depict the State's M-22 trunkline marker. In its state-court complaint, the State sought a declaratory judgment that the Manual on Uniform Traffic Control Devices (MUTCD) applies to M22 and its use and registration of the State's M-22 trunkline route marker as a trademark, and that the use of the M-22 trunkline route marker as a trademark is unlawful under both state and federal law. (ECF No. 1-1 at PageID.15, 28.) M22 removed the case to this Court pursuant to 28 U.S.C. § 1441(a), on the ground that the assumed coercive action that M22 would bring against the State would be a claim under the Lanham Act. M22 thus alleged that this Court has jurisdiction pursuant to 28 U.S.C. § 1338(a). (ECF No. 1 at PageID.2, 7.)

      Following removal, the Court issued an Order directing the parties to address the Court's jurisdictional concerns. (ECF No. 12.) The parties have filed briefs as directed. Having reviewed

the briefs, the Court concludes that it lacks declaratory judgment jurisdiction under both Article III and the Declaratory Judgment Act because an actual controversy does not exist.[1] Accordingly, because the Court lacks jurisdiction to entertain the State's declaratory judgment action, the Court will remand this matter to the state court.

## I. BACKGROUND

Pursuant to the Michigan Vehicle Code and federal law, the State has adopted the MUTCD as a uniform system of traffic-control devices. (ECF no. 1-1 at PageID.13–14.) The MUTCD embodies regulations adopted by the Federal Highway Administration and is the national standard for all traffic-control devices, *e.g.,* road signs, traffic signals, etc., installed on pubic streets, highways, and private roads open to public travel. (*Id.* at PageID.2–3.) To qualify for federal funding on road projects, recipient states must adopt the MUTCD, or a state manual in substantial conformance with the MUTCD, and supplement the MUTCD or state manual as required by law and with approval by the Federal Highway Administration. (*Id.* at PageID.20.) The State first included its M-22 trunkline highway sign, with its distinctive white diamond design, in its 1971 version of the MUTCD.

M22 is a limited liability company located in Traverse City, Michigan. M22 produces and sells clothing and other retail merchandise that feature a depiction of the M-22 trunkline marker. M22 also uses the M-22 trunkline marker to advertise events that originate near highway M-22. (*Id.* at PageID.277.) M22 owns several registered trademarks that incorporate the State's M-22 marker, including Reg. No. 3348635, for use in association with apparel, and Reg. No. 3992159, for use in association with retail store services (collectively "the Marks"). (ECF Nos. 5-2, 5-3.)

---

[1] The Court framed the issue in its Order as one of standing. The actual controversy requirement under the Declaratory Judgment Act is coextensive with Article III's constitutional limits, and includes Article III's standing and ripeness doctrines. *See Fieger v. Mich. Supreme Court*, 553 F.3d 955, 961 (6th Cir. 2009); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007).

In May 2012, the State's Attorney General determined that no entity can lawfully claim exclusive control over use of the State's trunkline route marker design. (ECF No. 1-1 at PageID.26.) Thereafter, the State sent a letter to M22 seeking M22's cooperation in canceling the Marks, but M22 refused. (*Id.*) M22 has threatened to sue other users of the State's trunkline markers with M-22, M-25, M-26, M-28, M-37, and M-119 in the diamond design for trademark infringement, but it apparently has never threatened to sue the State for trademark infringement. (*Id.* at PageID.26–27.)

In December 2013, the State filed a proceeding before the TTAB seeking cancellation of the Marks. The State alleged that M22's use of the Marks was in violation of the law, based on the following provision from the MUTCD:

> Traffic control devices shall be defined as all signs, signals, markings, and other devices used to regulate, warn, or guide traffic, placed on, over, or adjacent to a street, highway, pedestrian facility, or bikeway by authority of any public agency having jurisdiction.
>
> . . . .
>
> Any traffic control device design or application provision contained in this Manual shall be considered to be in the public domain. Traffic control devices contained in this Manual shall not be protected by a patent, trademark, or copyright, except for the Interstate Shield and any other items owned by the [Federal Highway Administration].

(*Id.* at PageID.18–19.) In August 2015, the TTAB issued an order denying the State's motion for summary judgment on its unlawful use in commerce claim, stating:

> At a minimum, genuine disputes of material fact remain as to the legal effect, if any, of the Manual on Uniform Traffic Control Devices (MUTCD), as supplemented, whether the provisions of the MUTCD apply to [M22], whether there has been a violation of the supplemented MUTCD, and, if so, whether such violation can be considered unlawful so as to warrant the cancellation of [M22's] registrations.

(*Id.* at PageID.27, 34.) Thereafter, the State filed its instant complaint in state court, seeking a judicial declaration that M22's use and registration of the Marks is unlawful.

3

## II. DISCUSSION

"[F]ederal courts are courts of limited jurisdiction and have a continuing obligation to examine their subject matter jurisdiction throughout the pendency of every matter before them." *In re Wolverine Radio Co.*, 930 F.2d 1132, 1137 (6th Cir. 1991); *see also Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583, 119 S. Ct. 1563, 1570 (1999) ("[S]ubject-matter [jurisdiction] delineations must be policed by the courts on their own initiative."). Accordingly, this Court may only adjudicate claims "that (1) are within the judicial power of the United States, as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 553 (6th Cir. 2012) (internal quotation marks omitted).

The Declaratory Judgment Act provides, in part, "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The "actual controversy" requirement under the Declaratory Judgment Act is coextensive with Article III's case or controversy requirement. *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-41, 57 S. Ct. 461, 463-64 (1937)). The existence of a case or controversy is highly dependent upon the particular facts at issue. The difference between an actual controversy and an abstract question in a given case "'is necessarily one of degree,'" and must be ascertained by examining the totality of the circumstances to determine whether there is a "'substantial controversy between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Golden v. Zwickler*, 394 U.S. 103, 108, 89 S. Ct. 956, 959-60 (1969) (quoting *Md. Cas. Co. v. Pac.*

4

*Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 512 (1941)). In *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 S. Ct. 764 (2007), the Supreme Court reiterated that the proper inquiry "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127, 127 S. Ct. at 771 (quoting *Md. Cas. Co.*). The Court rejected the Federal Circuit's prior, more strict, "reasonable apprehension of imminent suit" test for declaratory judgment standing as inconsistent with the Court's prior decisions. *Id.* at 132 n.11, 127 S. Ct. at 774 n.11. The reasonable apprehension test required "both (1) an explicit threat or other action by the patentee, which creates a reasonable apprehension on the part of the declaratory plaintiff that it will face an infringement suit and (2) present activity which could constitute infringement or concrete steps taken with the intent to conduct such activity." *Novartis*, 482 F.3d at 1339. Post-*MedImmune*, a reasonable apprehension of suit can still serve as a basis for a valid Article III controversy, but it is only "one of multiple ways that a declaratory judgment plaintiff can satisfy the more general all-the-circumstances test to establish that an action presents a justiciable Article III controversy." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1336 (Fed. Cir. 2008).

An inquiry into the basis for federal jurisdiction in this case reveals, quite prominently, the absence of a justiciable Article III controversy. Because the State seeks a declaratory judgment, the Court must "look[] through the declaratory judgment" to determine "[t]he controversy in this case." *Marel v. LKS Acquisitions, Inc.*, 585 F.3d 279, 280 (6th Cir. 2009); *see also Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1344 (Fed. Cir. 2007) ("A useful question to ask in determining whether an actual controversy exists is what, if any, cause of action the declaratory judgment defendant may have against the declaratory judgment plaintiff[.]"). The coercive action in this case,

5

as M22 indicates in its notice of removal, would be a claim for trademark infringement under the Lanham Act.

A coercive action is only theoretical at this point. The State does not allege in its complaint, nor has it presented any evidence in its response to this Court's December 20, 2017, Order, that M22 has ever threatened to sue the State for trademark infringement. Nor does the State allege that M22 has mentioned, or done anything to indicate, that it believes the State is engaging in any conduct that might infringe the Marks. *See Alticor, Inc. v. Nutrisystem, Inc.*, 1:12-CV-256, 2012 WL 4794596, at *2 (W.D. Mich. Oct. 9, 2012) (concluding that a letter from the defendants' attorneys to the plaintiff stating that the plaintiff's use and registration of a mark infringed the defendants' rights in its mark in violation of the Lanham Act gave rise to a substantial controversy between the parties); *EchoStar Satellite LLC v. Finisar Corp.*, 515 F. Supp. 2d 447, 451–52 (D. Del. 2007) (finding an actual controversy under *MedImmune* because the defendant was successful in a patent infringement suit against a third party on the same patent at issue and the defendant issued a press release stating its intention to continue licensing discussions with other companies). Without an indication from M22 that the State is infringing, "the controversy exists in the mind of only one side, which makes it speculative (as opposed to real) and one-sided (as opposed to between the parties)." *Edmunds Holding Co. v. Autobytel Inc.*, 598 F. Supp. 2d 606, 610 (D. Del. 2009); *see also Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 627 (7th Cir. 1995) ("The focus of the inquiry must rest on the defendant's statements and conduct since an apprehension alone, if not inspired by defendant's actions, does not give rise to an actual controversy." (internal quotation marks omitted)). Moreover, the State does not allege that it is currently engaging in, or intends to engage in, any conduct—such as selling t-shirts bearing the M-22 marker—that might expose it to a suit for trademark infringement. At bottom, the State is left to argue that the pending TTAB

proceeding—that it initiated against M22—gives rise to an actual controversy under Article III. However, the existence of such a proceeding, without more, does not show the existence of a live controversy. *See Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1246 (10th Cir. 2008) (noting that "because a party may oppose a trademark registration for reasons having nothing to do with any infringement dispute between the trademark applicant and the opponent, courts should not take a TTAB opposition filing, automatically and by itself, to be conclusive evidence of the existence of a live dispute"); *see also Vina Casa Tamaya S.A. v. Oakville Hills Cellar, Inc.*, 784 F. Supp. 2d 391, 396–97 (S.D.N.Y. 2011) (finding the "defendant's opposition to plaintiff's trademark registration through a cease-and-desist letter and Notice of Opposition before the TTAB—accompanied by settlement negotiations touching on use of the disputed mark . . . insufficient to create an actual controversy based on infringement").

In short, the totality of the circumstances does not demonstrate the existence of the requisite actual controversy to invoke this Court's jurisdiction.

The State's response shows that it also lacks standing under Article III. To establish Article III standing, a plaintiff must show injury-in-fact, a causal relationship between the injury and the defendant's challenged acts, and the likelihood that a favorable decision will redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992). An injury-in-fact must be "concrete and particularized and actual or imminent." *Id.* at 560, 112 S. Ct. at 2136. A plaintiff who seeks declaratory relief can meet the standing requirements by showing "actual present harm or a significant possibility of future harm . . . ." *Peoples Rights Org., Inc. v. City of Columbus*, 152 F.3d 522, 527 (6th Cir. 1998). Citing *Cunningham v. Laser Golf Corp.*, 222 F.3d 943 (Fed. Cir. 2000), the State argues that it need only show a belief that it is likely to be damaged by M22's registration. *Cunningham* involved an appeal of a TTAB cancellation final decision; the

7

instant case does not. Thus, *Cunningham* does not speak to standing in this case. Moreover, as the Federal Circuit has recently observed, "although the immediacy and redressability requirements for Article III standing can be relaxed when Congress accords a procedural right to a litigant—e.g., the right to appeal an administrative decision—the 'requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute.'" *PPG Indus., Inc. v. Valspar Sourcing, Inc.*, __ F. App'x __, 2017 WL 526116 (Feb. 9, 2017) (quoting *Consumer Watchdog v. Wis. Alumni Res. Found.*, 753 F.3d 1258, 1263 (Fed. Cir. 2014)).

The State argues that it has shown harm from the Marks because (1) it risks losing federal highway funding, (2) it will suffer irreparable harm if it is prevented from enforcing state and federal law precluding a trademark in its highway markers, and (3) the Marks threaten its ability to continue using its signs without the threat of lawsuits by M22. None of these arguments has merit.

As for the risk of losing federal highway funding, the State says that "[t]o qualify for and remain eligible for federal highway funding, *the State* must comply with applicable federal statutes and regulations." (ECF No. 13 at PageID.2006 (italics added).) The State then argues that M22's registrations violate state and federal law and harm the State. (*Id.*) But the State does not say how M22's registration of the Marks means that the State itself is not complying with the MUTCD or federal law in a manner that will subject it to losing federal highway funding. That is, the State cites no statute, regulation, or case that requires it to police and prevent trademark registrations of the State's highway markers by third parties in Michigan or, for that matter, anywhere in the United States, on risk of losing highway funding. Moreover, this argument is speculative at best; the State does not allege or offer any evidence that the Federal Highway Administration or any other federal agency has, in fact, threatened to withhold highway funding from the State because M22 has registered the Marks. Thus, the State has not shown "actual present harm or a significant possibility

of future harm" based on a loss of federal highway funding. *Peoples Rights Org., Inc.*, 152 F.3d at 527.

As for its second alleged harm, it is difficult for the Court to see how a federal court's denial of declaratory relief, which, incidentally, is matter of discretion to begin with, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282, 115 S. Ct. 2137, 2140 (1995), can cause irreparable harm to a State. This is so because if the State actually has standing to enforce the law or regulation at issue, some other, more direct mechanism for enforcing it probably exists. In any event, the case the State cites to support its argument, *Maryland v. King*, 133 S. Ct. 1 (2012), is easily distinguishable. In *King*, Maryland was enforcing its criminal laws and sought a stay of the Maryland Court of Appeals judgment pending the Supreme Court's review of Maryland's petition for a writ of certiorari. Thus, Maryland was seeking injunctive relief to preserve a criminal conviction from its own courts and was not seeking, as the State does here, what is essentially an advisory opinion on a matter pending before a federal administrative body.

The State's final proffered harm—the threat of future lawsuits by M22—fails because, as indicated above, any such harm is speculative. *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 712 (7th Cir. 2002) ("The declaratory judgment plaintiff must be able to show that the feared lawsuit from the other party is immediate and real, rather than merely speculative."); *United Parcel Serv., Inc. v. Pennie*, No. 03 C 8019, 2004 WL 2064547, at *3 (N.D. Ill. Sept. 8,, 2004) ("UPS's bare speculation concerning the possibility that Pennie may, sometime in the future, bring a lawsuit against it (which is all that UPS offers in this regard) is not sufficient to invoke this court's power to grant a declaratory judgment."). Moreover, "[t]he mere existence of a potentially adverse [trademark] does not cause an injury nor create an imminent risk of an injury." *Prasco, LLC*, 537 F.3d at 1338.

Finally, the State's argument that the TTAB has already found standing is not persuasive. As discussed above, this Court is bound by the strictures of Article III, while the TTAB is not.

### III. CONCLUSION

For the foregoing reasons, the Court concludes that it lacks jurisdiction over the State's claim for declaratory relief. Because Michigan courts are not subject to Article III's requirements and the Court is not versed in Michigan's standards for jurisdiction over declaratory judgment actions, the Court will remand the case to the state court to allow it to decide wither to entertain the State's complaint.

A separate order will enter.


Dated: April 21, 2017　　　　　　　　　　　　　　/s/ Gordon J. Quist
　　　　　　　　　　　　　　　　　　　　　　　　GORDON J. QUIST
　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE